IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Staffing Services Association of Illinois; American Staffing Association; ClearStaff Inc.; M.M.D. Inc. d/b/a The AllStaff Group, Inc.; TempsNow Employment and Placement Services LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Jane R. Flanagan, solely in her capacity as the Director of the Illinois Department of Labor, <br><br> Defendant. | Case No. 1:23-cv-16208 <br><br> Hon. Thomas M. Durkin |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO MODIFY
THE PRELIMINARY INJUNCTION OR TO ISSUE AN INDICATIVE RULING**

The Court need not reach any disputed issues to resolve Plaintiffs' motion. The Department of Labor agrees that, despite the pending appeal, this Court retains authority under Federal Rule of Civil Procedure 62(d) to make conforming edits to its preliminary injunction order to reflect the minor language changes in Public Act 103-1030. That is all that Plaintiffs ultimately seek through their current motion. ECF 59 ¶ 7. To be clear, however, the Department disagrees with Plaintiffs that Public Act 103-1030 substantially altered the benefits provision of section 42 of the Illinois Day and Temporary Labor Services Act ("Act"), 820 ILCS 175/42, and the Department maintains its objections to the preliminary injunction itself. Plaintiffs are wrong that Public Act 103-1030 made it "more difficult for Agencies to comply with" the benefits provision. ECF 60 at 2. Though it is unnecessary for the Court to address the parties' disagreements at this juncture, the Department provides its position on these disputed issues to preserve its objections for the record.

I.  **Background**

In 2023, the General Assembly passed, and Governor Pritzker signed into law, a suite of amendments to the Act. *See* Pub. Act 103-437. Relevant here, Public Act 103-437 created section 42, which required that a temporary laborer "assigned to work at a third party client for more than 90 calendar days … be paid not less than the rate of pay and equivalent benefits as the lowest paid directly hired employee of the third party client." Pub. Act 103-437 sec. 5 (enacting 820 ILCS 175/42). A temporary labor service agency did not need to provide "equivalent benefits" to the temporary laborer in kind; rather, it could "pay the hourly cash equivalent of the actual cost [of] benefits in lieu of benefits required under this Section." *Id.*

Plaintiffs—three staffing agencies and two trade groups representing such agencies—sued the Department seeking to enjoin enforcement of various aspects of the amendments, including the benefits provision of section 42. ECF 1 ¶¶ 5–10, 68–82. Plaintiffs moved for a preliminary injunction barring the Department "from enforcing the 'equivalent benefits' provision." ECF 23 at 30. The motion was fully briefed, and the Court took evidence and heard argument at a hearing. ECF 21, 23, 32, 38, 43, 53–54. On March 11, 2024, the Court issued an opinion holding that Plaintiffs were likely to succeed on their claim that the benefits provision is preempted by the Employee Retirement Income Security Act ("ERISA"). ECF 45 at 4–11. On March 18, the Court entered a preliminary injunction order prohibiting the Department from enforcing the benefits provision. ECF 46. The Department appealed that order, and the Court stayed proceedings pending that appeal. ECF 48, 55.

In the 2024 legislative session, the General Assembly continued to refine aspects of the 2023 amendments through Senate Bill 3650, intended as a "trailer Bill" to "provide clarity around implementation." *See* House of Representatives Transcription Debate at 2 (May 21, 2024) (statement of Rep. Gonzalez) (Exhibit 1). Governor Pritzker signed the bill into law on August 8,

2

2024 as Public Act 103-1030. According to the bill's sponsor, Public Act 103-1030 embodied "a broad agreement [to] clarify some definitions" in various parts of the Act and to "make[] it easier for staffing agencies and businesses to comply with the law." Audio Recording of Hearing Before the H. Comm. on Lab. & Commerce at 35:26 (May 15, 2024) (statement of Rep. Gonzalez) (Exhibit 2). Among other things, Public Act 103-1030 amended the provision of section 42 requiring temporary labor service agencies to pay long-term temporary laborers equivalent wages as their clients pay comparable employees, permitting agencies and clients to comply with that provision by relying on average industry compensation data. *See* 820 ILCS 175/42(a)(2) (as amended). But Public Act 103-1030 did not substantially alter the analogous benefits provision. Again according to the bill's sponsor, "[w]e all agreed to let … the case"—that is, this case—"play itself out in court." *See* Ex. 1 at 4 (statement of Rep. Gonzalez).

Specifically, Public Act 103-1030 made three relevant but minor changes to the benefits provision. First, it clarified that the "trigger" point at which a temporary labor service agency must provide a day or temporary laborer with a certain minimum level of compensation occurs after the laborer has worked "720 hours within a 12-month period" (rather than after "90 calendar days")—*i.e.*, after 90 eight-hour workdays. 820 ILCS 175/42(b) (as amended). Second, it replaced the phrase "equivalent benefits" with the phrase "substantially similar benefits." *Id.* Third, it expressly permitted temporary labor service agencies to satisfy their obligations by considering a "job classification of employees" as the relevant comparator, rather than by reference to an individual employee. *Id.* It accordingly added the word "average" to the description of the cash-pay option, stating that an agency could pay laborers "the hourly average cash equivalent of the actual cost of the benefits" rather than the "hourly cash equivalent" under the old version. *Id.*

3

The Department filed its opening brief at the Seventh Circuit on June 18, 2024, after the General Assembly had passed the amendatory bill but before it was signed into law. In its brief, the Department explained that the pending bill, if signed into law by the Governor, would not moot the appeal, because the amendments made to the benefits provision were not material to the Court's analysis, and thus (presuming the bill was enacted) the amended statute would be "substantially similar" to the pre-amendment statute. *See Zessar v. Keith*, 536 F.3d 788, 794 (7th Cir. 2008) (an amendment to a statute passed while a case is on appeal will not moot the appeal if "the challenged statute" is "amended in insignificant ways"); Brief and Short Appendix of Defendant-Appellant at 6 n.4, *Staffing Servs. Ass'n of Ill. v. Flanagan*, No. 24-1450 (7th Cir.) (Exhibit 3). After Senate Bill 3650 was signed into law, and consistent with the legislature's expressly stated intent and the Department's understanding of the bill, the Department issued a bulletin stating that "[t]he 'equal benefits' part of the law remains enjoined by the courts and is not currently being enforced by the Department." *See* Ill. Dep't of Lab., *Bulletin for Day and Temporary Labor Service Agencies*, at 1 (Aug. 13, 2024) (Exhibit 4).

On August 30, 2024, Plaintiffs filed a motion seeking either to modify the Court's preliminary injunction order under Federal Rule of Civil Procedure 62(d) to reflect the passage of Public Act 103-1030 or, in the alternative, to issue an indicative ruling under Rule 62.1. ECF 59.

**II.     Argument**

    **A.     Although Plaintiffs are not ultimately entitled to relief, the Court has the power to modify its preliminary injunction order to reflect the passage of Public Act 103-1030.**

The Department continues to disagree with the Court's March opinion and the preliminary injunction that rests on it. For that reason, it cannot consent to Plaintiffs' motion. But the Department agrees with Plaintiffs that the Court has the power under Rule 62(d) to modify the injunction to account for Public Act 103-1030—should it believe such clarification to be

4

necessary—and that the reasoning of the Court's opinion appears to apply equally to the amended benefits provision. Nothing more is needed to resolve Plaintiffs' current motion.

First, the Court has the power under Rule 62(d) to modify its injunction. The plain text of Rule 62(d) permits such modifications: "While an appeal is pending from an interlocutory order … that grants … an injunction, the court may suspend, modify, restore, or grant an injunction … ." Fed. R. Civ. P. 62(d). Thus, "[t]he civil rules allow the district court to modify an injunction to maintain the status quo pending appeal." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 384 (7th Cir. 2018) (citing Rule 62(c), the prior numbering of Rule 62(d)). That standard is applicable here: Modifying the preliminary injunction to clarify that it continues to apply notwithstanding Public Act 103-1030 would maintain the status quo, under which the Department is enjoined from enforcing the benefits provision. (Indeed, the Department's bulletin, *see* Ex. 4, rests on exactly this understanding of the current injunction.) The Court thus has power to modify its injunction under Rule 62(d), without any need for an indicative ruling.

This Court's power to act under Rule 62(d) is not undermined by the rule that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). Equally longstanding is the principle that "after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court." *Newton v. Consol. Gas Co. of N.Y.*, 258 U.S. 165, 177 (1922). Rule 62(d) grants express authority to modify an injunction for such purposes pending appeal. *See United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 346 (7th Cir. 2019) (citing both Rule 62(d) and *Newton* for a district court's power to clarify an injunction that has been appealed). Courts ought therefore to "treat these modification issues as case-management problems … not as issues

of jurisdiction." *MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922, 930 (7th Cir. 2019) (Hamilton, J., dissenting).

*Eli Lilly*, discussed above, confirms this Court's power to act despite the Department's appeal. The appellant there identified technical defects in the preliminary injunction in its opening brief at the Seventh Circuit. *See Eli Lilly & Co. v. Arla Foods Inc.*, 2017 WL 5244681, at *1 (E.D. Wis. July 18, 2017). The appellee then moved the district court to fix those issues while the appeal remained pending, and the district court did so under Rule 62(d). *Id.* The Seventh Circuit held that this course of action was "a permissible procedure," 893 F.3d at 384, and issued an opinion on the merits of the preliminary injunction, *id.* at 381–84. To the extent the Court concludes that clarification of the preliminary injunction order is needed, the same course is appropriate here. The changes that Plaintiffs seek to the order are of the same magnitude as those sought by the appellee in *Eli Lilly*. Plaintiffs' motion ultimately asks only that the Court "modify the Decision and Order to reflect the changes made by [Senate Bill] 3650." ECF 59 ¶ 7. Such narrow relief would merely maintain the Department's existing legal obligations while the appeal is resolved, much as the district court in *Eli Lilly* modified its order to preserve "the injunction's purpose" as the district court originally intended. *Eli Lilly*, 2017 WL 5244681, at *2.

Second, if the Court concludes that clarification is appropriate, the Department agrees that a modification of the existing injunction appears to follow from the reasoning of the Court's March opinion. To be clear, the Department does not consent to a modification of the injunction, because it continues to believe that the Court erred in enjoining the enforcement of the benefits provision. *See generally* Ex. 3. In the Department's view, however, Public Act 103-1030 makes no changes that are material to the preliminary-injunction analysis. As the Department explained during preliminary-injunction proceedings, Plaintiffs' ERISA claim fails as a matter of law because it

6

does not require or induce employers to change their ERISA benefits plans. ECF 32 at 5, 9. The minor changes made by Public Act 103-1030 to the benefits provision are therefore irrelevant. For that reason, the Department has twice publicly stated that the benefits provision remains enjoined under the Court's existing preliminary injunction order despite the passage of Public Act 103-1030. *See* Ex. 3 at 6 n.4; Ex. 4 at 1.

The Court, moreover, disagreed with the Department on the merits of the ERISA claim and concluded that the burdens imposed by the benefits provision gave rise to irreparable harm. ECF 45 at 4–11, 17–20. The Court's legal conclusions as to the scope of ERISA preemption are now law of the case that generally "should continue to govern the same issues in subsequent stages" of this litigation, at least before this Court. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). To be sure, law-of-the-case doctrine is "highly flexible," *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000), and the Department could always seek reconsideration of the March opinion should an appropriate circumstance arise. But, for purposes of the present motion, the Court's conclusion that ERISA preempts a law directing employers to "determine the value of many different benefit plans and then determine whether to provide the value in cash or the benefits themselves by modifying their plans or adopting new ones," ECF 45 at 6, is law of the case, and the changes made by Public Act 103-1030 do not appear to alter the Court's analysis on that point. Indeed, as the bill's sponsor explained, the drafters intentionally left the basic mechanics of the benefits provision unchanged *because* this litigation was ongoing. *See* Ex. 1 at 4. Likewise, the Department continues to contest Plaintiffs' showing of irreparable harm, *see* Ex. 3 at 36–42, but because the Court's contrary findings are premised on the basic operation of the provision, they would appear also to apply to the provision as amended.

### B. Though irrelevant to their motion, Plaintiffs' arguments about the burdens imposed by Public Act 103-1030 are also incorrect.

The Court does not need to go further than the analysis set out above. If it concludes that clarification of the existing preliminary injunction is warranted, it can simply exercise its authority under Rule 62(d) to modify the injunction and maintain the status quo pending appeal.

Plaintiffs, however, contend that modification of the preliminary injunction is warranted for a separate reason, namely that Public Act 103-1030 made it even "more difficult for Agencies to comply with" the benefits provision. ECF 60 at 2. As discussed above, the Court does not need to reach this argument, but if it does, it should reject it. The changes made by Public Act 103-1030 to the benefits provision are clarifying, not substantive, in nature, and to the extent that they alter temporary labor service agencies' obligations under the Act at all, they ease compliance rather than make it more burdensome.

*First*, Public Act 103-1030 changes the 90-day trigger for section 42 to "720 hours within a 12-month period," which corresponds to 90 eight-hour workdays. Pub. Act 103-1030 sec. 5 (amending 820 ILCS 175/42(b)). Plaintiffs' declarant asserts that this change increases the compliance burden because "we are now required to track our temporary labor employees' hours instead of their days." ECF 60-1 ¶ 13. This avowal presents a legal conclusion, not a fact about the declarant's business. And as a claim about employment law, it is borderline frivolous. Federal and state employment laws have long required all employers to keep records of their employees' hours worked for proper wage payment. *See* 29 C.F.R. § 516.2(a)(7) (Fair Labor Standards Act); 820 ILCS 105/8 (Illinois Minimum Wage Law). The Act at issue here, before the passage of Public Act 103-1030, likewise required temporary labor service agencies to keep records of "the number of hours worked" and "the specific location sent to work." 820 ILCS 175/12(a)(2). And Plaintiffs do not challenge the equal-pay provision of section 42, which also now uses the 720-hour trigger.

8

*See* 820 ILCS 175/42(a) (as amended); *see also* Ex. 2 at 45:14 (statement of Donovan Griffith) (explaining that the benefits provision was amended to 720 hours "to be uniform"). Public Act 103-1030 transparently does not necessitate any new recordkeeping as to hours worked.

Indeed, it was temporary labor service agencies and their clients who lobbied for this change from 90 days to 720 hours to ease compliance by aligning the section 42 trigger with existing payroll systems. At the preliminary injunction hearing, Plaintiffs submitted into evidence a video recording of a hearing on proposed regulations to implement the benefits provision. ECF 53, 53-9, 54. At that hearing, the president of the Illinois Search and Staffing Association testified that "[o]ur recommendation would be to change the 90 working days to the equivalent in hours worked—720 hours." ECF 54 at 1:00:29. Plaintiff AllStaff Group, Inc., belongs to the Illinois Search and Staffing Association. *See* Ill. Search & Staffing Assoc., *Profile: The AllStaff Group* (Exhibit 5). The owner of another staffing company also testified in favor of changing to an hours-based calculation. *See* ECF 54 at 1:07:57. On May 15, 2024, at a committee hearing on Senate Bill 3650, a representative of the Illinois Manufacturers' Association criticized the original law, asking rhetorically: "What does 90 days mean? It is a calendar day? Is it 90 days' work?" Ex. 2 at 44:31 (statement of Donovan Griffith). He explained that he took this concern to the original sponsors of section 42 and that "they were very helpful in getting clarity" via Senate Bill 3650. *Id.* at 44:42.

*Second*, Public Act 103-1030 changes the phrase "equivalent benefits" to "substantially similar benefits." Pub. Act 103-1030 sec. 5 (amending 820 ILCS 175/42(b)). Plaintiffs assert that this change worsens the compliance burden because the phrase "substantially similar" is "more nebulous and imprecise." ECF 60 at 10. This argument fails as a matter of law. To the extent these terms are different at all, it is easier to render two things "similar" than to make them "equivalent."

*Compare Similar*, Merriam-Webster ("alike in substance or essentials"); *with Equivalent*, Merriam-Webster ("equal in force, amount, or value"). Even Plaintiffs' declarant appears to recognize this reality, stating that he is "heartened to some extent by being given more latitude." ECF 60-1 ¶ 15. Regardless, this linguistic nitpicking is simply not the stuff of a pre-enforcement facial challenge. In this posture, the presumption is that Illinois courts will construe "substantially similar" to lessen Plaintiffs' burden, not worsen it. *See Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 494 (7th Cir. 2012) ("In adjudicating facial challenges, federal courts do not assume that state officials will construe state law in the most expansive way imaginable.").

*Third*, Public Act 103-1030 expressly permits temporary labor service agencies to satisfy the provision by providing benefits (or the cash equivalent thereof) similar to those provided by their third party clients to a comparable "job classification of employees," Pub. Act 103-1030 sec. 5 (amending 820 ILCS 175/42(b))—that is, to the *category* of (say) forklift drivers, *see* ECF 44 at 14:13, rather than to the lowest-paid forklift driver performing comparable duties. The amendatory act then adds the word "average" to the description of the cash-pay option, stating that agencies can comply with section 42 by providing "the hourly *average* cash equivalent of the actual cost of the benefits" to temporary laborers rather than the "hourly cash equivalent" of benefits. Pub. Act 103-1030 sec. 5 (amending 820 ILCS 175/42(b)) (emphasis added). To the extent this change is substantive, it clarifies that Plaintiffs are not required to track and value individual employees' choices to accept or reject benefits, a task that Plaintiffs have repeatedly asserted would be "impossible." *See* ECF 1 ¶¶ 32–39; ECF 23 at 5; ECF 38 at 4. Whether or not those allegations were correct as to the original law, *see* Ex. 3 at 30–31 n.8 (explaining that they were not), Public Act 103-1030 has made clear that they are no longer correct. Section 42 now focuses clearly on the "average" cost of benefits that the client provides to a category of workers.

10

*See* Pub. Act 103-1030 sec. 5 (amending 820 ILCS 175/42(b)). This clarification smooths out any individual choices that purportedly complicate the calculations.

Plaintiffs' contrary reading of the law bears no relation to its text. Plaintiffs' declarant avers that compliance will require them to track all individuals in the job classification and what decisions they make about benefits. *See* ECF 60-1 ¶ 8. But the statute requires no such thing. Just as before, a temporary labor service agency must merely take the information provided to it by its third party clients regarding the benefits provided to their relevant employees, *see* 820 ILCS 175/42(c) (as amended), and ensure that the agency is compensating its own workers to a comparable degree. Plaintiffs point to no text that could even plausibly be read to require agencies to perform "computations for dozens or hundreds of employees" regarding those employees' individualized choices regarding benefits. ECF 60-1 ¶ 8. Once again, Plaintiffs cannot prop up their facial challenge by "constru[ing] [the] law in the most expansive way imaginable." *Ctr. for Individual Freedom*, 697 F.3d at 494.

*Fourth*, and finally, Public Act 103-1030 adds a new sentence on the respective roles of the third party client and the temporary labor service agency in complying with section 42:

> Upon receipt of the accurate and complete information described in this subsection from the third party client, it shall be the responsibility and duty of the day and temporary labor service agency to calculate and determine the straight-time hourly rate of pay and the benefits it shall offer to the day or temporary laborer, including any cash equivalent.

Pub. Act 103-1030 sec. 5 (amending 820 ILCS 175/42(c)). Plaintiff's declarant asserts that this sentence "makes compliance more difficult" for his agency, ECF 60-1 ¶ 11, but the new sentence imposes no new obligations on temporary labor service agencies at all. Even under the prior version of this provision, agencies bore the burden of providing appropriate compensation to their employees—that was, after all, the purpose of section 42. Plaintiffs' main complaint appears to be that it may not always be clear whether the information that a client has provided is "accurate and

11

complete." *See id*. But if an agency is not sure whether a client's data is "accurate" or "complete," it can ask the client to clarify, or rely on any such failure as a defense in an enforcement action. Any ambiguity in these common terms hardly makes section 42's benefits provision "more difficult" to comply with, *id.*, in any practical sense.

For the above reasons, the Court should not rely on plaintiffs' assertions about increased burdens associated with Public Act 103-1030 in modifying its preliminary injunction. The Court should, at most, modify the injunction to preserve the status quo and to assuage Plaintiffs' anxieties that unnamed "third parties" might think that Public Act 103-1030 "is not clearly enjoined." ECF 60 at 6. Plaintiffs' filings provide neither occasion nor support to go any further.

## CONCLUSION

For the foregoing reasons, though the Department continues to disagree with the Court's opinion and the preliminary injunction issued in accordance with it, the Department agrees that this Court retains authority to make conforming changes to the order in light of Public Act 103-1030.

Dated: September 9, 2024

John Hazinski
R. Henry Weaver
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
*john.hazinski@ilag.gov*
*robert.weaver@ilag.gov*
(773) 590-6838

Respectfully submitted,

KWAME RAOUL,
Attorney General of Illinois, on behalf of
Defendant Jane R. Flanagan

By:  */s/ R. Henry Weaver*
        Assistant Attorney General