**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STAFFING SERVICES ASSOCIATION OF ILLINOIS; AMERICAN STAFFING ASSOCIATION; CLEARSTAFF INC.; M.M.D. INC. d/b/a THE ALLSTAFF GROUP, INC.; TEMPSNOW EMPLOYMENT and PLACEMENT SERVICES LLC, | ) ) ) ) ) ) | No. 1:23-CV-16208 |
| | ) | |
| PLAINTIFFS, | ) | Judge Thomas M. Durkin |
| | ) | |
| V. | ) | |
| | ) | |
| JANE R. FLANAGAN, *Solely in Her Capacity as the Director of the Illinois Department of Labor*, | ) ) ) | |
| | ) | |
| DEFENDANT. | ) | |

**BRIEF OF *AMICI CURIAE* THE ERISA INDUSTRY COMMITTEE, AMERICAN BENEFITS COUNCIL, NATIONAL RETAIL FEDERATION, CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, NATIONAL ALLIANCE OF HEALTHCARE PURCHASE COALITIONS, SOCIETY FOR HUMAN RESOURCE MANAGEMENT, HR POLICY ASSOCIATION, BUSINESS GROUP ON HEALTH & BUSINESS ROUNDTABLE IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**

Miller & Chevalier Chartered
Joanne Roskey (admitted *pro hac vice*)
   *Counsel of Record*
Anthony F. Shelley (admitted *pro hac vice*)
MILLER & CHEVALIER CHARTERED
900 16th St. NW
Black Lives Matter Plaza
Washington, DC 20006
Tel. (202) 626-5800
Fax. (202) 626-5801
jroskey@milchev.com
ashelley@milchev.com

November 15, 2024          *Counsel for Amici Curiae*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTEREST OF *AMICI CURIAE* .................................................................................................... 1

ARGUMENT .......................................................................................................................................... 1

I.      The Court Should Again Hold That Plaintiffs Are Likely to Succeed on the Merits of Their ERISA Preemption Claim and That the Balance of Equities Requires Issuance of a Preliminary Injunction ................................................................................... 1

       A.     Congress, when Enacting ERISA, Made the Regulation of Employee Benefit Plans an Exclusively Federal Concern ........................................................ 2

       B.     Section 42 Continues to Have an Impermissible Connection with ERISA Plans for All the Reasons Previously Articulated by this Court and for Additional Reasons ..................................................................................................... 3

II.     The Court Should Also Find Section 42 Is Preempted by ERISA Because It Impermissibly References the ERISA Plans of Staffing Agency Employers and those of Staffing Agency Clients Contrary to Controlling Supreme Court Precedent ................................................................................................................................ 7

III.    Cases Addressing ERISA Preemption of Prevailing Wage and Minimum Compensation Laws Are Distinguishable and Do Not Control the Issues Before This Court .................................................................................................................................. 9

IV.    Section 42 Renders ERISA Plan Administration Unmanageable and Disincentivizes Employers to Offer Benefits to the Detriment Of Employees ................ 11

       A.     Section 42 Places Unmanageable Burdens on ERISA Plans and Plan Administrators and Fails to Account for How Employee Benefits Are Administered and Funded ................................................................................................ 11

       B.     Section 42 Incentivizes Staffing Agency Clients to Decrease Benefits to Their Workforces ................................................................................................................ 14

CONCLUSION ..................................................................................................................................... 15

APPENDIX ............................................................................................................................... *Post*

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981)..................................................................................................3

*Appivon, Inc. v. Ret. Sav. & Emp. Stock Ownership Plan*,
99 F.4th 928 (7th Cir. 2024) ...................................................................................7

*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*,
519 U.S. 316 (1997)..............................................................................................2, 11

*Concerned Home Care Providers v. Cuomo*,
783 F.3d 77 (2d Cir. 2015)......................................................................................11

*Conkright v. Frommert*,
559 U.S. 506 (2010)..................................................................................................14

*Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*,
809 F.2d 617 (9th Cir. 1987) ...................................................................................4

*Cvelbar v. CBI Ill. Inc.*,
106 F.3d 1368 (7th Cir. 1997) .................................................................................4

*District of Columbia v. Greater Washington Bd. of Trade*,
506 U.S. 125 (1992)...................................................................................... *passim*

*Diak v. Dwyer, Costello & Know, P.C.*,
33 F.3d 809 (7th Cir. 1994) .....................................................................................4

*Egelhoff v. Egelhoff*,
532 U.S. 141 (2001)................................................................................................3, 4

*ERISA Industry Comm. v. City of Seattle*,
No. C18-1188, 2020 WL 2307481 (W.D. Wash. May 8, 2020), *aff'd*, 840 F.
App'x 248 (9th Cir. 2021) ................................................................................10, 11

*FMC Corp. v. Holiday*,
498 U.S. 52 (1990)....................................................................................................7

*Fort Halifax Packing Co. v. Coyne*,
482 U.S. 1 (1997)......................................................................................................4

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016)...........................................................................................2, 3, 5

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*,
    546 F.3d 639 (9th Cir. 2008) ............................................................................................10

*Greater Wash. Bd. of Trade v. District of Columbia*,
    948 F.2d 1317 (D.C. Cir. 1991), *aff'd*, 506 U.S. 125 (1992)......................................14

*Gruber v. Hubbard Bert Karle Weber, Inc.*,
    159 F.3d 780 (3d Cir. 1998)............................................................................................4

*Hampers v. W.R. Grace & Co.*,
    202 F.3d 44 (1st Cir. 2000)............................................................................................7

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)........................................................................................................2

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990)....................................................................................................4, 6

*Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley*,
    37 F.3d 945 (3d Cir. 1994)..........................................................................................11

*Kulinski v. Medtronic Bio-Medicus, Inc.*,
    21 F.2d 254 (8th Cir. 1994) ...........................................................................................4

*Lockheed Martin Corp. v. Spink*,
    517 U.S. 882 (1996)........................................................................................................2

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995)....................................................................................................3, 6

*New Jersey Staffing Alliance*, et al.*v. Fais*, et al.,
    No. 1:23-cv-02494 (D.N.J. filed May 5, 2023) ...................................................1, 10

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987)..........................................................................................................7

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983)..........................................................................................................3

*WSB Elec., Inc. v. Curry*,
    88 F.3d 788 (9th Cir. 1996) .........................................................................................11

**Statutes**

Illinois Day and Temporary Labor Services Act ........................................................................2
    820 ILCS 175/1 to 820 ILCS 175/99........................................................................2
    820 ILCS 175/42.................................................................................... *passim*
    820 ILCS 175/43...................................................................................................4, 5

820 ILCS 175/45................................................................................................................6
820 ILCS 175/55................................................................................................................6
820 ILCS 175/55 to 175/96.................................................................................................6
820 ILCS 175/67................................................................................................................6
820 ILCS 175/70................................................................................................................6
820 ILCS 175/95................................................................................................................6

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ...........................1
29 U.S.C. § 1002.........................................................................................................8, 9
29 U.S.C. § 1003................................................................................................................8
29 U.S.C. § 1132.............................................................................................................6, 7
29 U.S.C. § 1144................................................................................................................2

New Jersey Temporary Workers' Bill of Rights Act,
N.J. Stat. Ann. §§ 34:8D-1 *et seq.* ...........................................................................10

**Other Authorities**

Illinois Department of Labor, *Day and Temporary Labor Service Agency FAQ*,
FAQ 6, https://labor.illinois.gov/faqs/day-temp-labor-faq.html (last visited
Nov. 14, 2024) ....................................................................................................10

U.S. Department of Labor, *Report to Congress: Annual Report on Self-Insured
Group Health Plans*, 6-10 (Mar. 2023),
https://www.dol.gov/sites/dolgov/files/EBSA/researchers/statistics/retirement-
bulletins/annual-report-on-self-insured-group-health-plans-2023.pdf ...................................12

**INTEREST OF *AMICI CURIAE***

*Amici*[1] are invested in enabling employers to provide high-quality and cost-effective

benefits to employees, retirees, and their families. *Amici* recognize the central role the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, plays in

enabling employers to design and offer benefits that meet the needs of their workforces and in

creating uniformity and predictability in how those benefits are administered and funded. The

state law at issue in this case, if allowed to stand, would disrupt the uniform, federal law

framework governing job-based benefits that ERISA provides, thereby subjecting employers to

myriad state and local benefits laws that frustrate the objectives ERISA was enacted to promote.

On this basis, all of the *Amici* have a strong interest in this case and in how this Court interprets

and applies ERISA's express preemption provision.[2]

**ARGUMENT**

**I.     THE COURT SHOULD AGAIN HOLD THAT PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR ERISA PREEMPTION CLAIM AND THAT THE BALANCE OF EQUITIES REQUIRES ISSUANCE OF A PRELIMINARY INJUNCTION**

A finding of a likelihood of success on the merits on Plaintiffs' ERISA preemption claim

and the issuance of a preliminary injunction is appropriate for all the reasons this Court

previously articulated in its March 11, 2024, Memorandum Opinion and Order (ECF No. 45)

("March Order"), and for the additional reasons explained in this brief. The Illinois General

---

[1] *See* Appendix (describing each of the *Amici*).

[2] Counsel for Plaintiffs did not author this brief in whole or in part. Plaintiffs and Plaintiffs' counsel did not contribute financial support intended to fund the preparation or submission of this brief. No other individuals or organizations, other than the *Amici*, contributed financial support intended to fund the preparation or submission of this brief. The undersigned counsel for the *Amici* represent Plaintiff American Staffing Association in the matter of *New Jersey Staffing Alliance*, et al.*v. Fais*, et al., No. 1:23-cv-02494 (D.N.J. filed May 5, 2023), currently pending in the U.S. District Court for the District of New Jersey, and they have received renumeration for legal services rendered in that matter.

Assembly's May 24, 2024 amendment of 820 ILCS 175/42 ("Section 42" or "the benefits mandate") of the Illinois Day and Temporary Labor Services Act ("Act") (820 ILCS 175/1 to 820 ILCS 175/99), which occurred *after* issuance of the March Order, did not correct any of the problems the Court identified with the original benefits mandate, and, as Defendant has acknowledged, "does not materially amend" the prior version that this Court already enjoined on ERISA preemption grounds. *See* Br. and Short App. of Def.-Appellant The Director of the Ill. Dep't of Labor, No. 24-1450 (7th Cir. June 18, 2024) (ECF No. 14) at 6 n.4.

**A.      Congress, when Enacting ERISA, Made the Regulation of Employee Benefit Plans an Exclusively Federal Concern**

To ensure exclusively federal regulation and to minimize administrative and financial burdens on plans and plan administrators, ERISA generally preempts "any and all State laws" that "relate to" employee benefit plans. 29 U.S.C. § 1144(a); *see also Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016); *District of Columbia v. Greater Washington Bd. of Trade* ("*Greater Washington*"), 506 U.S. 125, 127 (1992). As this Court previously recognized in its March Order (at 6-9, 11), Section 42 is one such state law that ERISA preempts under this "broad" and "expansive" standard. *Gobeille,* 577 U.S. at 327; *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.* ("*Dillingham Constr.*"), 519 U.S. 316, 324 (1997).

ERISA preemption advances important policy and societal objectives that benefit both American workers and employers. Because employers have discretion in deciding whether to offer to their workforces most types of employee benefits, *see Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 442 (1999); *Lockheed Martin Corp. v. Spink,* 517 U.S. 882, 887 (1996)*,* a uniform set of federal standards encourages employers to provide employee benefits, and affords employees and their families the enhanced security and protections those benefits offer. Without ERISA preemption, employers would face a patchwork of divergent and conflicting state and

2

local laws regulating employee benefit plans, which would make benefit plan administration and compliance unmanageable and cost prohibitive. The March Order correctly recognized that Section 42 thwarts Congress' decision to make the regulation of employee benefit plans an "exclusively [] federal concern" by including an express preemption clause in ERISA, to promote such plans' voluntary creation and growth. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). Requiring ERISA administrators to master and comply with the laws of 50 states are "'burdens ultimately borne by the beneficiaries.'" *Gobeille*, 577 U.S. at 321 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-150 (2001)).

> **B.      Section 42 Continues to Have an Impermissible Connection with ERISA Plans for All the Reasons Previously Articulated by this Court and for Additional Reasons**

Under ERISA's preemption provision, "[a] law 'relates to' an employee benefit plan" and is preempted, "if it has a [1] connection with or [2] reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). One way state laws have an impermissible connection with ERISA plans is where they "'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict choice of insurers.'" *Gobeille*, 577 U.S. at 320 (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* ("*Travelers*"), 514 U.S. 645, 668 (1995)). An impermissible connection with ERISA plans is also present when a state law "interferes with nationally uniform plan administration." *Id.* at 323.

This Court's reasoning in the March Order that Section 42 has an impermissible connection with ERISA employee benefit plans applies with equal force with respect to the amended law. The only ways covered staffing agency employers can offer their employees "substantially similar" benefits to what their staffing agency clients provide their direct-hire "comparable" employees is to create new ERISA plans or modify their existing ERISA plans to provide "substantially similar" benefits, or, in some instances (where employees of staffing

3

agency clients are not under a collective bargaining agreement), to pay their employees the cash equivalent to the staffing agency client-offered benefits through arrangements that will themselves constitute ERISA-covered plans.[3] *See* 820 ILCS 175/42(b) and (c); 820 ILCS 175/43.

The new Section 42 continues to significantly interfere with nationally uniform plan administration. It requires staffing agency employers with employees in more than one state to pay their employees in Illinois the level of benefits prescribed by the statute or, in some instances, the cash equivalent, while offering differing benefits to their employees in other states. Such "'tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction' is exactly the burden ERISA seeks to eliminate." *Egelhoff*, 532 U.S. at 151 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). The amended Act further interferes with uniform plan administration by stating that the requirements of Section 42 do not apply when the comparator direct-hire employees of staffing agency clients are covered under a "valid" collective bargaining agreement that was in effect on April 1, 2024, and that the "hourly cash payment" specified in Section 42(b) is not required if the comparator employees are

---

[3] Employers' payments to employees pursuant to Section 42's cash option will create additional ERISA plans. Indeed, "'[a]n employer . . . can establish an ERISA plan rather easily.'" *Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998) (quoting *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987)). The Seventh Circuit has stated that for an arrangement to be a "plan, fund, or program" covered by ERISA, there must be "an ongoing administrative scheme" and "its terms must be reasonably ascertainable." *Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1374 (7th Cir. 1997) (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1997) and *Diak v. Dwyer, Costello & Know, P.C.*, 33 F.3d 809, 812 (7th Cir. 1994)). An on-going administrative scheme is present when, for example, a "company [is required] to make administrative determinations about coverage and eligibility [that are] not simple mechanical calculations," *Cvelbar,* 106 F.3d at 1378, and, "'to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.'" *Id.* at 1375 (quoting *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.2d 254, 257 (8th Cir. 1994)).

4

covered by a "valid" collective bargaining agreement for any period covered by that agreement. *See* 820 ILCS 175/43.

Section 42 is also preempted under the "connection with" test for several additional reasons not addressed by the Court in the March Order. The amended law, like its predecessor, intolerably burdens the administration of the ERISA plans sponsored by staffing agency clients by imposing reporting and disclosure requirements on those clients' ERISA plans above and beyond what ERISA requires. To effectuate Section 42, the Act requires that staffing agency clients track and report to staffing agencies "all necessary information related to . . . benefits it provides to the applicable classification of directly hired employees" "necessary for" the staffing agency to comply with Section 42(b). 820 ILCS 175/42(c).

The Supreme Court has stated that a state law has an impermissible "connection with" ERISA plans if it "governs a central matter of plan administration." *Gobeille,* 577 U.S. at 320 (cleaned up). One objective of ERISA is "to make benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures," including uniform federal "reporting and disclosure requirements." *Id.* at 320-21, 322. Because of these federal reporting requirements, the Supreme Court held that ERISA preempted a Vermont law that required plans "to report detailed information about claims and plan members." *Id.* at 323. Those additional state law reporting requirements impermissibly governed a central matter of plan administration—reporting and disclosure—already subject to ERISA's federal requirements. "Differing, or even parallel, regulations from multiple jurisdictions could create wasteful administrative costs," and "[p]re-emption is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans." *Id.* For the

5

same reasons, ERISA preempts Section 42(c)'s requirement that staffing agency clients report to staffing agency employers the details of ERISA-plan benefits for their directly hired employees.

Section 42's enforcement provisions, *see* 820 ILCS 175/55 to 175/96, also provide another basis for ERISA preemption. These provisions impermissibly dictate "alternative enforcement mechanisms" that compete with ERISA and are contrary to its objections. *Travelers*, 514 U.S. at 658.[4] These enforcement provisions, which are all tied to Section 42's benefits mandate, have an impermissible "connection with" the ERISA plans of staffing agency employers and staffing agency clients and are preempted. They impose on those plans "administrative and financial burden[s] of complying with conflicting directives . . . between [the] State[] and the Federal Government" and if allowed to stand would enable Illinois "to develop different substantive standards applicable to the same employer conduct." *Ingersoll-Rand, Co.*, 498 U.S. at 142. Indeed, the Act's enforcement scheme imposes costly liability and penalties against staffing agency clients for the failure to make required reports regarding their employees' ERISA plan benefits, which is a matter of exclusively federal concern governed by ERISA and enforced by the federal government. *See* 29 U.S.C. § 1132(a) (setting forth the exclusive causes of actions and remedies that may be pursued by plan participants, fiduciaries, and the Secretary of Labor under ERISA).

Congress made ERISA's civil enforcement scheme the exclusive means by which plan

---

[4] The Act provides a robust enforcement scheme permitting the Illinois Department of Labor to take action against staffing agency employers and staffing agency clients for violations of Section 42 by, among other things, revoking their registration to operate and imposing significant monetary penalties. *See* 820 ILCS 175/45, 175/55 and 175/70. The Act also permits civil actions against staffing agencies and staffing agency clients by third parties for violations of Section 42, *see* 820 ILCS 175/67, and permits staffing agencies to sue staffing agency clients for a client's violations of Section 42. *See* 820 ILCS 175/95; 820 ILCS 175/42. Furthermore, the Act enables "person[s] aggrieved by a violation of the Act," including staffing agency employees, to sue "to collect . . . employment benefits . . . denied" as well as for liquidated damages. 820 ILCS 175/95(a)(1).

6

participants and beneficiaries can sue to recover wrongfully denied benefits. *See* 29 U.S.C. § 1132(a)(1)(B). Indeed, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under [29 U.S.C. § 1132(a)] would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). But Illinois has tried to do just that by enacting enforcement provisions that seek to regulate legal claims related to the payment of ERISA-covered benefits and duties owed under ERISA. *See FMC Corp. v. Holiday*, 498 U.S. 52, 59-60 (1990) (finding state law regulating legal claims for "payment of benefits" had impermissible "connection with" and "reference to" ERISA plans); *Appivon, Inc. v. Ret. Sav. & Emp. Stock Ownership Plan*, 99 F.4th 928, 955 (7th Cir. 2024) (holding state-law breach of duty claims seeking remedies for conduct governed by ERISA to be preempted); *Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 53-54 (1st Cir. 2000) (holding state-law breach of contract claim was preempted under ERISA as alternative claim for benefits).

II. **THE COURT SHOULD ALSO FIND SECTION 42 IS PREEMPTED BY ERISA BECAUSE IT IMPERMISSIBLY REFERENCES THE ERISA PLANS OF STAFFING AGENCY EMPLOYERS AND THOSE OF STAFFING AGENCY CLIENTS CONTRARY TO CONTROLLING SUPREME COURT PRECEDENT**

As this Court correctly recognized, ERISA preemption may be based on either of the two tests under ERISA's preemption provision. *See* March Order at 11. Nonetheless, the *Amici* strongly urge this Court to hold that ERISA preempts Section 42 under the "reference to" test as well as the "connection with" test. Section 42 is a textbook example of an impermissible reference to an ERISA plan because its operation depends entirely on references to the ERISA plans of both staffing agency employers and the staffing agency clients.

In *Greater Washington,* which involved a District of Columbia ordinance requiring "employers who provide health insurance for their employees to provide equivalent health

7

insurance coverage for injured employees eligible for workers' compensation benefits," the Supreme Court held that the ordinance was preempted by ERISA because it contained an impermissible "reference to" ERISA plans. *Greater Washington*, 506 U.S. at 126-26. The D.C. ordinance at issue mandated benefits coverage under ERISA-exempt workers' compensation plans (*see* 29 U.S.C. § 1003(b)(3)) by reference to the level of benefits provided under employers' ERISA plans.

The Supreme Court stated that "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . even if the law is not specifically designed to affect such plans, or the effect is only indirect . . . and even if the law is consistent with ERISA's substantive requirements." *Greater Washington*, 506 U.S. at 129-30 (internal quotation marks and citation omitted). The Court held the D.C. ordinance preempted by ERISA because the mandated workers' compensation coverage was "measured by reference to 'the existing health insurance coverage' provided by the employer and 'shall be at the same benefit level'" and the employer's "existing health insurance coverage" was "a welfare benefit plan under ERISA. *Id.* at 130 (quoting D.C. law and 29 U.S.C. § 1002(1)). The Court said it made no difference that the ordinance's requirements were part of D.C.'s regulation of ERISA-exempt workers' compensation plans. *Id.* at 131.

Section 42 is at least as problematic as the D.C. ordinance in *Greater Washington*. Just as that ordinance required equivalence in benefits between two pools of workers, Section 42 mandates equivalence in benefits between a staffing agency's employees and the direct-hire employees of staffing agency clients. And in both instances, the coverage providing the benchmark, or reference point, is ERISA coverage. Under the D.C. law, the employer's coverage provided to its regular employees (the benchmark for employees on workers'

8

compensation) automatically fit the definition of an ERISA welfare plan under 29 U.S.C.

§ 1002(1).  Likewise, the employer-sponsored benefits offered by staffing agency clients to their

directly hired workers (Section 42's benchmark for a staffing agency's temporary workers) are

covered under ERISA.

If anything, Section 42 raises greater preemption concerns than the D.C. ordinance.  The

reference to ERISA plans in *Greater Washington* was in furtherance of providing equivalent

benefits in a non-ERISA setting (*i.e.*, pursuant to ERISA-exempt plans for employees on workers'

compensation), whereas Section 42's reference to ERISA plans is for the purpose of providing

other ERISA-covered benefits to staffing agency employees.  An ERISA plan exists whenever a

private employer programmatically supplies welfare or pension benefits to its employees.  *See id.*

§ 1002(1), (2); *supra* note 3.  The benefits programs offered by staffing agency employers to their

employees constitute ERISA plans, just as the benefits programs staffing agency clients provide

to their direct-hire employees constitute ERISA plans.

Hence, while it is enough under *Greater Washington* for an impermissible "reference"

that a state law uses ERISA benefits as a benchmark in a non-ERISA context, Section 42 goes

further and references ERISA benefits on both ends of the equation by making ERISA benefits

the reference point for providing other ERISA benefits.  Given that Section 42 fits squarely

within the controlling "reference to" ERISA preemption precedent, this Court should find

Plaintiffs are likely to succeed on their ERISA preemption claim on this basis as well.

## III.    CASES ADDRESSING ERISA PREEMPTION OF PREVAILING WAGE AND MINIMUM COMPENSATION LAWS ARE DISTINGUISHABLE AND DO NOT CONTROL THE ISSUES BEFORE THIS COURT

This Court correctly distinguished the cases relied upon by Defendant in the prior

proceedings that address ERISA preemption of state and local laws mandating prevailing wages

on public works contracts or minimum compensation for workers in other sectors of the

9

economy, and it should do so again.[5]  *See* March Order at 10-11.  Indeed, when addressing these prevailing wage and minimum compensation cases in the prior proceedings, Defendant failed to acknowledge how courts have distinguished the laws involved in them from the type of equivalent benefit laws at issue in *Greater Washington* and the instant case.[6]

For example, in *Golden Gate Restaurant Ass'n v. City & County of San Francisco* ("*Golden Gate*"), 546 F.3d 639 (9th Cir. 2008), the Ninth Circuit distinguished the local ordinance in that case from the D.C. ordinance, stating that, with the former, an employer who is obligated to comply with the local mandate "calculates its required payments based on the hours worked by its employees *rather than on the value or nature of the benefits available to ERISA plan participants*" as prohibited under the preempted equal benefit law in *Greater Washington*. *Id.* at 658 (emphasis added).  Similarly, in *ERISA Industry Committee v. City of Seattle*, No. C18-1188, 2020 WL 2307481 (W.D. Wash. May 8, 2020), *aff'd*, 840 F. App'x 248 (9th Cir. 2021), the Ninth Circuit stated that the D.C. ordinance "incorporated a reference to an ERISA plan in determining the amount of coverage under that ordinance.  In contrast, neither the *Golden Gate* ordinance nor [the Seattle ordinance] measure the required level of payments based on an ERISA

---

[5] The *Amici* do not concede that the courts deciding these prevailing wage and minimum compensation cases correctly applied ERISA's preemption provision or ERISA preemption precedents in those cases.

[6] This case is also distinguishable from *New Jersey Staffing Alliance*, et al. *v. Fais*, et al., where the court issued an unpublished, non-binding decision denying a preliminary injunction of the "equal benefits provision" contained in the New Jersey Temporary Workers' Bill of Rights Act, N.J. Stat. Ann. §§ 34:8D-1 *et seq.  See Fais*, Opinion, No. 1:23-cv-02494 (D.N.J. Aug. 30, 2024) (ECF No. 68). The court found that the plaintiff staffing agency and business associations who filed the lawsuit may ultimately succeed on the merits of their ERISA preemption challenge to the law but ruled that a preliminary injunction was not appropriate given the unique procedural history of case.  The court reasoned, incorrectly in the view of the *Amici*, that because the preemption challenge was filed approximately a year after the law took effect, potential reliance interests of the temporary employees covered by the law had to be considered, as well as the interests of New Jersey.  Unlike the state law in *Fais*, however, Section 42 has not gone into effect and Illinois has indicated that it is not enforcing the benefits mandate, *see* Illinois Department of Labor, *Day and Temporary Labor Service Agency FAQ*, FAQ 6, https://labor.illinois.gov/faqs/day-temp-labor-faq.html (last visited Nov. 14, 2024), so that no reliance interests here could have taken hold.

plan.  In particular, [the Seattle ordinance] sets payments on dollar amounts determined by the

employee's status." *Id.* at \*6 (internal citations omitted).[7]  As in *Greater Washington*, the

required level of benefits due under Section 42 is based on an ERISA plan and the cost of

benefits available to ERISA plan participants; it is not determined by a simple calculation

involving a preset rate as seen in the prevailing wage and minimum compensation cases.[8]

**IV.     SECTION 42 RENDERS ERISA PLAN ADMINISTRATION UNMANAGEABLE AND DISINCENTIVIZES EMPLOYERS TO OFFER BENEFITS TO THE DETRIMENT OF EMPLOYEES**

      **A.     Section 42 Places Unmanageable Burdens on ERISA Plans and Plan Administrators and Fails to Account for How Employee Benefits Are Administered and Funded**

The Court's March Order highlights the significant burdens on the administration of

ERISA plans that Section 42 would impose.  The same burdens exist under the amended version

of Section 42.  Section 42 renders employee benefit plan administration unmanageable, as is

shown by the law's application to workforce benefits that vary in scope or cost based on

individual employee choice or circumstances.  One such benefit type is "self-insured" or "self-

funded" health plan benefits, which make up the majority of private employer-sponsored health

---

[7] *See also, e.g., Concerned Home Care Providers v. Cuomo*, 783 F.3d 77, 90 (2d Cir. 2015) (distinguishing N.Y. law setting home care aide compensation as a percentage of rate set by Living Wage Law from laws like the one in *Greater Washington* where the "law acts immediately and exclusively upon ERISA plans . . . , or where the existence of ERISA plans is essential to the law's operation") (cleaned up);  *Dillingham Constr.,* 519 U.S. at 324-25 (holding prevailing wage mandate was not preempted by ERISA and citing *Greater Washington* as an example of a case involving a law preempted because it imposed requirements that referenced ERISA-covered programs and the existence of an ERISA plan was, therefore, central to its operation); *WSB Elec., Inc. v. Curry,* 88 F.3d 788, 793 (9th Cir. 1996) (distinguish prevailing wage law at issue from laws like the D.C. law in *Greater Washington* where statutes "expressly refer to ERISA plans [and] also had some effect on those plans"); *Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley*, 37 F.3d 945, 957 (3d Cir. 1994) (distinguishing the prevailing wage law from the law in *Greater Washington* and stating that the latter was preempted by ERISA because the "injured employees' rights were premised on the existence of ERISA plans").

[8] Nothing in the amended Act should alter this Court's prior holdings that an option for employers to comply through the payment of cash does save Section 42 from ERISA preemption and that Section 42 is not a mere regulation of costs borne by ERISA plans.  *See* March Order at 6-11.

11

benefits in the United States.[9] Unlike employee health benefits funded through insurance where benefits costs are set through insurance company premiums, employers' costs for self-insured health benefits are not static, but vary based on employees' health care needs and employees' choices about the health care services they received. As a result, no two employees, even those occupying the same position or job classification, will receive benefits coverage that costs a self-funded plan sponsor the same amount.

As best one can tell from the text, Section 42 requires a staffing agency client with a self-funded health plan to determine, for each job classification of comparator employees, the hourly costs of health benefits it pays for those employees. That leads to a determination of the "hourly average . . . actual cost of the benefits" a staffing agency client provides its employees in the relevant classification, which is reported with other information to the staffing agency each time a temporary laborer is placed with the client and meets the hours-worked thresholds in the statute. 820 ILCS 175/42(b) and (c). Likewise, the staffing agency employer must determine for each of its employees placed with a client how much it pays for health benefits for that employee, which, if it has a self-insured health plan, will depend on the employee's utilization of health services. It then must compare its benefits offering to that employee to its client's offerings to the client's comparable employees in the relevant job classification to determine if they are "substantially similar" and, if not, it must alter its ERISA-covered benefits offering to comply with the law or pay its employee the cash equivalent benefit if that option is available.

_____

[9] According to a 2023 U.S. Department of Labor report, 42,300 of the 74,100 (57%) private sector health plans were self-insured or mixed-insured, and together covered over 64 million participants. *See* U.S. Department of Labor, *Report to Congress: Annual Report on Self-Insured Group Health Plans*, 6-10 (Mar. 2023), https://www.dol.gov/sites/dolgov/files/EBSA/researchers/statistics/retirement-bulletins/annual-report-on-self-insured-group-health-plans-2023.pdf. Employer sponsors of self-insured plans pay their plans' covered health expenses directly as the plans incur claims. Sponsors of mixed-insured plans retain this responsibility for a subset of benefits but transfer the risk for the remaining benefits to health insurers. *Id.* at 6.

*Id*. The staffing agency presumably must also determine its hourly cost of benefits to its employee to make the required comparison.

The "actual cost of the benefits" a third-party staffing agency client provides direct-hire employees in a job classification is not something an employer or a plan administrator to a self-funded health plan can readily ascertain. 820 ILCS 175/42(b). Costs vary depending on who the direct-hire employees are, how much they utilize their health plan coverage, and whether they have individual or family coverage, among other factors. Likewise, the hourly cost and hourly average costs of self-insured benefits are not data points that health plans, employers, or plan administrators have readily available to them. Most self-insured health plans hire third-party claims administrators to determine the amount of benefits payable on each health claim submitted, taking into account plan coverage terms, health care provider network agreements, participant cost-sharing amounts, and deductibles. Often these third-party claims administrators are responsible for issuing benefit payments directly to plan participants and they usually send the plan administrator or employer plan sponsor a funding request that covers the benefits amounts payable to all plan participants in the aggregate for a given period (*e.g.,* each week or month). As a result, and due to applicable privacy laws governing protected health information, plan sponsors and administrators do not have unfettered access to individual employee health benefits cost information. They would have to modify their contracts with and *pay substantial increased fees to the plan service providers* to try to obtain this information. Third-party administrators, in turn, would be required to divert their focus away from paying benefits to the time- and data-intensive processes for determining the fluctuating and individualized "hourly" cost of benefits per employee. This work would involve analysis of extensive amounts of medical claims data at a minimum and would be required each time a staffing agency employee

13

is placed in a new temporary position or at a new client site for more 720 hours in a 12-month period. Simply put, the requirements imposed on plans, plan administrators, third-party administrators, staffing agency employers, and staffing agency clients by Section 42 are ill-conceived and unmanageable. They will increase the cost of benefits and compliance in ways that will discourage employers from offering benefit plans.[10]

### B. Section 42 Incentivizes Staffing Agency Clients to Decrease Benefits to Their Workforces

An unintended consequence of Section 42 is to incentivize staffing agency clients to decrease the benefits they offer to their direct-hire workers in order to lessen the costs they might incur when contracting for temporary workers. A similar conflict with ERISA's objectives was recognized by the D.C. Circuit in *Greater Washington*:

> [The D.C. statute] could have a serious impact on the administration and content of the ERISA-covered plan. The fact that the benefits to be provided to an employee receiving workers' compensation will be equivalent to the benefit levels provided while the employee is fully employed means that every time an employer considers changing the benefits under its ERISA-covered plan, it would have to consider the effect that such a change would have on its unique obligations to its District employees receiving workers' compensation. In light of the additional financial burden associated with an increase in ERISA health benefits, an employer might choose to forego such an increase altogether.

*Greater Wash. Bd. of Trade v. District of Columbia*, 948 F.2d 1317, 1325 (D.C. Cir. 1991), *aff'd*, 506 U.S. 125 (1992). State laws with the effect of the D.C. ordinance in *Greater Washington* or Section 42 here cannot stand alongside ERISA, given the latter's objective to "induc[e] employers to offer benefits," not to reduce or terminate them. *Conkright v. Frommert*,

---

[10] Similar consequences could result with some employer-sponsored retirement benefits, and other types of benefits where an employer's costs vary based on employee behavior and choice. For example, an employer may offer its employees a 401(k) plan with an employer match – *e.g.,* the employer agrees to match or contribute to an employee's account dollar-for-dollar until the employee contributes 3% of their salary and 50 cents of every dollar up to another 2% of their salary. The employer "cost" of these benefits is not static but depends on how much the employee decides to contribute, which may fluctuate each pay period depending on the number of hours worked and other factors.

559 U.S. 506, 517 (2010) (internal quotation marks and citation omitted).  Section 42 stands as an obstacle to the full achievement of Congress's goals.

## **CONCLUSION**

For these reasons, this Court should again hold that Plaintiffs have satisfied their burden of showing a substantial likelihood of success on the merits of their claim that the benefits mandate in Section 42 is preempted by ERISA.

November 15, 2024                                                  Respectfully submitted,

                                                                            */s/ Joanne Roskey*
                                                                            Joanne Roskey (admitted *pro hac vice*)
                                                                            Anthony F. Shelley (admitted *pro hac vice*)
                                                                            MILLER & CHEVALIER CHARTERED
                                                                            900 16th St. NW
                                                                            Black Lives Matter Plaza
                                                                            Washington, DC 20006
                                                                            Tel.  (202) 626-5800
                                                                            Fax. (202) 626-5801
                                                                            jroskey@milchev.com
                                                                            ashelley@milchev.com

                                                                            *Counsel for Amici Curiae*

15

## APPENDIX

The **ERISA Industry Committee** (ERIC) is a national trade association that represents large employers in matters related to employee benefits.  ERIC focuses on issues concerning the Employee Retirement Income Security Act (ERISA), advocating for policies that help its member companies provide cost-effective, high-quality benefits to their employees.

The **American Benefits Council** (the Council) is a Washington D.C.-based employee benefits public policy organization. The Council advocates for employers dedicated to the achievement of best-in-class solutions that protect and encourage the health and financial well-being of their workers, retirees, and families. Council members include over 220 of the world's largest corporations and collectively either directly sponsor or administer health and retirement benefits for virtually all Americans covered by employer-sponsored plans.

The **National Retail Federation** (NRF) is the world's largest retail trade association, representing retailers of all sizes and formats in the United States and globally.  NRF advocates for the interests of the retail industry by engaging in public policy, conducting research, and providing education and training.  NRF works to support the growth and success of the retail sector and foster innovation within the industry.

The **Chamber of Commerce of the United States of America** (the Chamber) is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.  An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.  To that end, the Chamber regularly files *amicus* briefs in cases, like this one, that raise issues of concern to the Nation's business community.

The **National Alliance of Healthcare Purchase Coalitions** (NAHPC) represents regional health coalitions across the United States comprised of employers and other healthcare purchasers who collaborate to improve the quality and value of healthcare. NAHPC promotes best practices and provides resources to help employers make informed decisions about healthcare purchasing, ultimately aiming to drive down costs and enhance the health and well-being of their employees.

The **Society for Human Resource Management** (SHRM) is the world's largest professional association dedicated to advancing the practice of human resource management. SHRM provides resources, certification, education, and advocacy to HR professionals and influences public policy and workplace standards, promoting best practices in HR to foster positive work environments and improve organizational performance.

The **HR Policy Association** (the Association) is a coalition of chief human resource officers from large employers across the United States, dedicated to representing their interests in public policy and human resource management. The Association focuses on issues such as employment law, labor relations, health care, and retirement policy, advocating for policies that support effective HR practices and help member companies navigate complex HR challenges and promote better employment outcomes.

The **Business Group on Health** (Business Group) is a non-profit organization dedicated to representing large employers on health and benefits policy. Leveraging a network of today's largest employers, the Business Group leads initiatives to solve modern health care issues, share best practices, and enable human resource and benefits leaders. Business Group's members provide health coverage for more than 60 million workers, retirees, and their families in 200 countries.

The **Business Roundtable** (BRT) is an association of chief executive officers of America's leading companies representing every sector of the U.S. economy and with employees in every state.  Business Roundtable works to promote a thriving United States economy and economic opportunity for all Americans by advocating for sound public policies.